UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| HOMEWELL FRANCHISING, INC. § | |
| § | |
| Plaintiff, § | |
| § | Case No.: 7:24-cv-00101 |
| v. § | |
| § | |
| EVANSTON INSURANCE COMPANY § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff HomeWell Franchising, Inc. ("HomeWell") hereby files this Original Complaint against defendant Evanston Insurance Company ("Evanston") and alleges as follows:

**SUMMARY & NATURE OF THE ACTION**

1. This is an insurance coverage dispute in which HomeWell seeks to enforce Evanston's obligation to defend HomeWell against a lawsuit (the "Lawsuit") that clearly falls within the scope of coverage.[1] Evanston issued a Professional Liability Policy to HomeWell that provides coverage for third-party liability claims that allege, among other things, injury as a result of HomeWell's purported role in advertising, marketing, and providing promotional materials related to its franchisee's business. And that is exactly what the Lawsuit alleges – "The website also makes other representations that misrepresent the level of care Defendants are licensed to provide." Complaint ¶ 40.

2. Notwithstanding that the Lawsuit falls within the scope of coverage, Evanston has disclaimed coverage for the lawsuit against HomeWell in breach of its policy. Evanston's basis for denial of coverage for the lawsuit against HomeWell is contrary to applicable law, without

---

[1] By seeking coverage for defense under the Evanston Policy, HomeWell does not concede to any liability nor admit that any allegations in the Egeland Complaint are true. HomeWell reserves all defenses to the Lawsuit.

merit, and ignores coverage-triggering allegations in the pleadings. And although HomeWell urged Evanston to reconsider its position, providing detailed explanations for why Evanston's denial was fundamentally flawed, Evanston has not responded to HomeWell, leaving HomeWell no choice but to file this lawsuit to assert its rights.

3. As such, HomeWell asks the Court to enforce Evanston's obligations by: (1) declaring that Evanston has a duty to defend HomeWell under its policy; (2) awarding damages for Evanston's breach of its contractual obligations under its policy for failing to provide a defense to HomeWell; (3) awarding statutory damages for Evanston's violations of Chapter 542 of the Texas Insurance Code, which requires the prompt payment of claims; (5) awarding attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code and/or Chapter 542 of the Texas Insurance Code; and (6) awarding HomeWell any other and further such relief to which it is entitled.

## PARTIES

4. HomeWell is a corporation organized under the laws of Texas, with its principal place of business in Burkburnett, Texas.

5. Evanston is organized under the laws of Illinois, with its principal place of business in Rosemont, Illinois.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between HomeWell and Evanston and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. HomeWell is a citizen of Texas for purposes of diversity jurisdiction because it is both incorporated and maintains its principal place of business in Texas.

8. Evanston is a citizen of Illinois for purposes of diversity jurisdiction because it is both incorporated and maintains its principal place of business in Illinois.

9. This Court has personal jurisdiction over Evanston because this lawsuit arises out of an insurance policy which was issued by Evanston and delivered to HomeWell's principal place of business, located in Texas.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts, events, and omissions giving rise to the claims in this lawsuit occurred within the District. Specifically, the insurance policy at issue was issued by Evanston to HomeWell's principal place of business in Burkburnett, Texas. Furthermore, Evanston's communications were directly with an employee of HomeWell located in Burkburnett, Texas. As a result, Evanston's breach of the policy at issue took place in Texas.

## FACTUAL ALLEGATIONS

**A.  The Policy Requires Evanston To Defend HomeWell Against The Lawsuit.**

11. Evanston issued Professional Liability Insurance Coverage Part No. MKLV4PEO001962 to HomeWell for the period from September 1, 2023 to September 1, 2024 (the "Policy").

12. Under the Policy, Evanston promised to "pay on behalf of [HomeWell] all sums . . . that [HomeWell] becomes legally obligated to pay as Damages and Claim Expenses incurred as a result of a Claim . . . by reason of a: Wrongful Act; or Personal Injury; in the performance of Professional Services rendered or that should have been rendered by" HomeWell.

13. "Professional Services" is defined to include "(1) providing training programs, operations manuals, and other aid necessary for the start-up of a franchise; (2) providing informational bulletins and newsletters; (3) giving advice and assistance in the start-up, management, and operation of a franchise, including site selection and the determination,

designation, or modification of the franchise territory; (4) administration of advertising and promotional programs; (5) providing assistance to franchisees in marketing the services, goods, or products of the franchisee; (6) development and administration of operating standards, specifications, or operating procedures for franchisees; or (7) the preparation, amendment, renewal, or registration of a Franchise Disclosure Document, Uniform Franchise Offering Circular, or any other offering circular described by the Federal Trade Commission."

14. Another benefit that HomeWell is entitled to enjoy under the Policy is that Evanston has "the right and duty to defend [HomeWell] and to investigate any Claim . . . to which coverage under this Coverage Part applies[.]"

15. A Claim includes "[t]he service of suit . . . against" HomeWell, such as the lawsuit that HomeWell is currently facing, which Evanston has refused to defend HomeWell against, despite the Policy clearly providing for such coverage.

16. Claim Expenses are defined as "reasonable and necessary amounts incurred . . . in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, [and] costs of appeals[.]"

17. Thus, HomeWell understood that the Policy would protect HomeWell against allegations of a Wrongful Act, which includes "a negligent act, error, or omission in Professional Services rendered or that should have been rendered by [HomeWell] or by any person for whose acts, errors, or omissions [HomeWell] is legally responsible[.]"

18. HomeWell also bought the Policy to protect itself against possible allegations of a Personal Injury, which is defined under the Policy to include, in relevant part, "humiliation or infliction of emotional distress committed in the performance of Professional Services."

19. Accordingly, in exchange for payment of the premium by HomeWell, the Policy requires that Evanston defend HomeWell in a suit alleging either (1) Wrongful Act(s) or (2) Personal Injury in the performance of Professional Services rendered by or that should have been rendered by HomeWell.

**B. The Lawsuit Alleges Wrongful Acts By HomeWell.**

20. On or about September 18, 2023, William Clair filed a lawsuit in his individual capacity, as successor in interest to Julie Egeland, and on behalf of Julie Egeland (decedent) in the case styled *Julie Egeland, et al. v. A.S.K. Consulting & Design LLC dba HomeWell Care Services, et al.*, Cause No. 23CV008666 in the Superior Court of the State of California in and for the County of Sacramento (the "Lawsuit").

21. The Lawsuit alleges various Wrongful Acts and/or Personal Injuries allegedly resulting from HomeWell's conduct, which are covered by the Policy.

22. The Lawsuit contains multiple factual allegations of Wrongful Acts, which largely revolve around HomeWell's website advertisements and marketing, including but not limited to the following:

- "However, Defendants omitted material facts that were not known to Ms. EGELAND and her family or otherwise accessible to them, that it knew or should have known would have influenced Ms. EGELAND and her family's decision as to what organization and what kind of care to obtain for Ms. EGELAND and would have influenced the decision to choose and continue to use the services of the Defendants." Egeland Complaint ¶ 36.

- "Defendants' website represents that it provides 'home health assistance to improve daily life.' However, Defendants are licensed as a home care organization, not a home health organization." Complaint ¶ 40.

- "The website also makes other representations that misrepresent the level of care Defendants are licensed to provide." Complaint ¶ 40.

- "Defendants misrepresented themselves as providing home health services to induce Ms. EGELAND and other clients to pay this high price for their services. Ms.

EGELAND and her family relied on these representations and would not have paid such a high price had they been informed of the true level of services Defendants were licensed to provide." Complaint ¶ 40.

- "Without Defendants' representations, Ms. EGELAND would not have purchased Defendants' services or continued to do so." Complaint ¶ 44.

- "Ms. EGELAND was in a class of persons that was foreseeably injured by Defendants' representations to the public through its website and written and verbal representations, and, as a result, suffered damages as set forth herein." Complaint ¶ 44.

- "Such representations did cause Ms. EGELAND to rely on Defendants' representations and she suffered monetary damages . . . as a result of her reliance on the statements of the Defendants." Complaint ¶ 45.

- "Had Ms. EGELAND and her family known Defendants could not provide for her needs and would not seek additional care when necessary, which they did not, they would not have chosen to hire and continue to purchase Defendants' services. The failure to provide this information became even more relevant once Ms. EGELAND fell and suffered from a fractured back and Defendants did not inform Ms. EGELAND's family of her injuries or seek additional care." Complaint ¶ 47.

- "By virtue of the foregoing, Defendants acted fraudulently, recklessly, and in conscious disregard for the rights and safety of its clients, including Ms. EGELAND, and consequently realized a financial benefit. Accordingly, Defendants are required to disgorge those financial benefits." Complaint ¶ 53.

- "Defendants made a practice of misrepresenting to potential residents and their families the type, level, and extent of care that would be provided to clients upon signing on to receive Defendants' services, . . . causing residents and their families to falsely believe they would receive sufficient care, for Defendants to charge clients higher prices." Complaint ¶ 56.

- "As a result, Plaintiffs are entitled to restitution of all funds paid by Ms. EGELAND or on her behalf." Complaint ¶ 58.

- "Defendants violated and continue to violate the CLRA by engaging in practices . . . which were intended to and did result in JULIE EGELAND and others to purchase Defendants' services including, but not limited to: Representing that services have characteristics that they do not have . . . ; Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another . . . ; Advertising goods or services with the intent not to sell them as advertised . . . ." Complaint ¶ 72.

- "As a result of these deceptive practices, JULIE EGELAND . . . lost money as a result of Defendants' actions described herein." Complaint ¶ 73.

23. The Lawsuit also contains allegations of Personal Injury, primarily with regard to alleged mental anguish suffered as a result of HomeWell's advertisements or promotional information, including but not limited to the following:

- "These failures were made by Defendants despite their promises to provide such care and subjected Ms. EGELAND to severe and extreme . . . mental anguish[] and distress." Complaint ¶ 24.

- "Such representations did cause Ms. EGELAND to rely on Defendant's representations and she suffered . . . mental injuries as a result of her reliance on the statements of the Defendants." Complaint ¶ 45.

- "As a direct and proximate result of the foregoing, Ms. EGELAND sustained . . . suffering[] and emotional distress[.]" Complaint ¶ 51.

24. The Plaintiffs in the Lawsuit seek to recover unspecified amounts of damages for the above alleged Wrongful Acts and/or Personal Injuries, and HomeWell is presently defending itself against the Plaintiffs' claims.

## C. Evanston Has Wrongfully Denied Coverage For HomeWell's Defense Against The Lawsuit.

25. HomeWell provided timely notice of the Lawsuit to Evanston (the "Claim").

26. Evanston initially responded on November 14, 2023 that it recognized that the Lawsuit alleged covered claims: "The Complaint asserts that the Insured misrepresents the grade of services that their franchisees provide in its advertising and promotional products. Therefore, it appears the Insuring Agreement for the Professional Liability Coverage Part of the Policy has been triggered." And although Evanston listed three exclusions that "may apply to limit or exclude coverage for this matter" (consistent with insurance-industry custom and practice to reserve rights on potentially applicable exclusions), Evanston never indicated that any one (or any combination) of these exclusions precludes or otherwise limits HomeWell's coverage for the Lawsuit, particularly its obligation to defend HomeWell.

27. Indeed, the November 14, 2023 correspondence contains only a one sentence statement related to why each potential exclusion "may apply to this matter," none of which result in HomeWell's Claim being barred under the Policy. For example, Evanston states that "[t]he Complaint alleges that Egeland sustained physical injury leading to her death, as a result of ASK Consulting & Design LLC dba HomeWell Care Services' failure to render basic custodial care and failure to provide a safe environment. As a result, it appears that Exclusion C. may apply to this matter. Evanston reserves the right to limit or disclaim coverage for the Claim on this basis."

28. Evanston never indicated that it was denying coverage and Evanston certainly never provided any factual basis for the applicability of the exclusions. Indeed, Evanston concludes this initial November 14, 2023 coverage correspondence to HomeWell by stating that "Evanston reserves all of its rights under the Policy to limit or disclaim coverage as explained herein." Thus, based on Evanston's reservation of rights, to which HomeWell relied, HomeWell retained counsel to defend it against the Lawsuit with the belief that Evanston would pay for the defense costs incurred.

29. In that regard, HomeWell repeatedly attempted to confer with Evanston regarding payment of its counsels' attorneys' fees. HomeWell repeatedly emailed Evanston, requesting to "discuss the matter of counsel." At no point did Evanston's claims specialist ever dispute HomeWell's clear belief that Evanston would be providing coverage and paying for its defense under the Policy. Instead, Evanston's claims specialist merely replied with her availability for a call or did not respond at all.

30. More than two months after Evanston's initial coverage correspondence and more than six weeks after HomeWell's first attempt to discuss the payment of defense counsel, on January 24, 2024, HomeWell sent another email to Evanston explaining that it had already hired

defense counsel as there were various deadlines approaching. HomeWell again stated that it "would like to discuss rates and coverage of fees, as [it] ha[d] already incurred significant costs for a case [it] believe[s] to be covered by [its] policy."

31. At this point in time, HomeWell had reasonably relied on Evanston's representations of coverage to hire defense counsel and was still of the belief, based on all of its correspondence with Evanston, that the Lawsuit was covered and that Evanston would provide a defense.

32. Later that same day, Evanston for the first time expressed that "Evanston will not be offering defense or indemnity coverage for this matter based on the policy exclusions outlined in my November 18, 2023 email, which is attached."[2] At no point in time did Evanston ever send HomeWell a formal coverage opinion or letter, despite stating in its November 14, 2023 initial correspondence that "[a] formal letter will be forthcoming."

33. Following the January 24, 2024 correspondence from Evanston, counsel for HomeWell sent a letter to Evanston disputing Evanston's characterization of the November 14, 2023 correspondence as a denial, rather than a reservation of rights, and contesting Evanston's denial of coverage.

34. Evanston, through counsel, responded to HomeWell's letter advising HomeWell that Evanston was denying coverage for the Lawsuit, but not indicating on what factual or policy bases Evanston was relying upon in making this purported denial. At the end of Evanston's response letter to HomeWell, counsel for Evanston invited HomeWell to respond in writing should HomeWell disagree with Evanston's coverage determination.

---

[2] There is no November 18, 2023 email from Evanston to HomeWell. Instead, HomeWell believes that Evanston was referring to the aforementioned November 14, 2023 email, which was also attached to the January 24, 2024 correspondence.

35. On April 16, 2024, HomeWell, through counsel, did respond, explaining the many factual allegations that give rise to coverage under the Policy, including those described in Paragraphs 24-25, as well as Texas law in support of HomeWell's view that the Claim is covered and that Evanston had not properly issued a denial of coverage.

36. The April 16, 2024 letter from HomeWell, and subsequent follow up call to Evanston's counsel, went unanswered by Evanston.

37. To date, HomeWell has still not been able to ascertain the factual or policy basis for Evanston's purported denial of coverage for the Claim.

## CAUSES OF ACTION

**A.   Count I – Declaratory Judgment for Defense Costs for the Lawsuit**

38. The foregoing allegations are incorporated herein by reference.

39. HomeWell's Declaratory Judgment claim is asserted in accordance with 28 U.S.C. § 2201.

40. The Policy is a valid and enforceable contract.

41. HomeWell is an Insured under the Policy.

42. HomeWell has complied with the terms and conditions under the Policy.

43. HomeWell has satisfied all conditions precedent, if any, to recover under the Policy, or those conditions have been waived.

44. The Policy provides coverage for the Lawsuit.

45. The operative pleadings in the Lawsuit contain allegations, including those set forth in Paragraphs 24-25, that fall within the scope of coverage and trigger the Policy.

46. Under the Policy, Evanston is obligated to pay the defense costs incurred by HomeWell associated with the defense of the Lawsuit.

47. An actual, justiciable controversy exists between HomeWell and Evanston regarding Evanston's obligation to defend HomeWell on an ongoing basis in connection with the Lawsuit under the Policy.

48. Intervention of this Court is required to declare the rights of the Parties under the Policy as to Evanston's obligation to defend HomeWell. The dispute between the Parties as to Evanston's obligation to defend HomeWell is real, definite, substantial, and ripe for determination by this Court pursuant to 28 U.S.C. §§ 2201, 2202.[3]

49. The uncertainty with respect to the rights, obligations, status, and legal relations under the Policy as to Evanston's obligation to defend HomeWell is actual and concrete and has immediate and imminent consequences for HomeWell.

50. A single comprehensive judicial determination of the rights and duties of Evanston under the Policy with respect to defense of HomeWell in connection with the Lawsuit is necessary to resolve some or all of the presently ripe disputes and controversies between the Parties with respect to defense coverage of the Lawsuit.

51. The requested declaratory relief, if granted, will terminate the present controversy between HomeWell and Evanston with respect to the defense obligation owed under the Policy for the Lawsuit.

**B.      Count Two -- Breach of Contract**

52. The foregoing allegations are incorporated herein by reference.

53. The Policy is a valid and enforceable contract.

---

[3] HomeWell notes that no such ripe or justiciable controversy exists between HomeWell and Evanston regarding Evanston's obligation to *indemnify* HomeWell in connection with any potential future settlement or judgment in the Lawsuit as no such settlement or judgement currently exists.

54. HomeWell is the named insured under the Policy and has standing to assert claims under the Policy.

55. HomeWell has complied with the terms and conditions under the Policy.

56. All premiums have been paid and HomeWell has satisfied all conditions precedent to coverage, if any, under the Policy, or those conditions have been waived.

57. The pleadings in the Lawsuit contain allegations, including those set forth in Paragraphs 24-25 above, that fall within the scope of coverage and triggers the Policy.

58. The terms of the Policy and the allegations in the Lawsuit unambiguously require Evanston to defend HomeWell under the Policy in connection with the Lawsuit.

59. Alternatively, the terms of the Policy and/or the allegations in the Lawsuit are ambiguous and should therefore be construed in favor of coverage under Texas law.

60. Evanston has breached the Policy by denying coverage and failing to defend HomeWell under the Policy in connection with the Lawsuit.

61. As a direct, proximate, and legal consequence of Evanston's breach of the Policy, HomeWell has suffered substantial damages, which HomeWell continues to incur as of the date of this filing.

C.   **Count Three – Violations of Chapter 542 of the Texas Insurance Code**

62. The foregoing allegations are incorporated herein by reference.

63. HomeWell has made a Claim under the Policy for defense costs incurred in connection with the Lawsuit and has satisfied all conditions under the Policy.

64. HomeWell's claim for defense costs is a "first-party" insurance claim.

65. Evanston's failure to promptly pay amounts owed under the Claim violates the Prompt Payment of Claims Statute in Chapter 542 of the Texas Insurance Code.

66. Consequently, HomeWell is entitled to the damages set forth in § 542.060 of the Texas Insurance Code including, in addition to the amount of its unpaid defense costs, interest at the rate of eighteen percent (18%) per annum as well as its reasonable attorneys' fees.

**D.     Notice of Intent to Pursue Claims Under Chapter 541 of the Texas Insurance Code**

67. The foregoing allegations are incorporated herein by reference.

68. Pursuant to Section 541.154 of the Texas Insurance Code, HomeWell hereby provides notice of its intent to pursue a claim against Evanston under Section 541.151 of the Texas Insurance Code by amending this suit after sixty (60) days.

69. HomeWell and Evanston are "persons" as that term is defined by § 541.002(2) of the Texas Insurance Code.

70. Evanston's conduct as set forth above constitutes violations of §§ 541.060(a)(1), (2), (3), and (7) in that it has engaged in unfair or deceptive acts or practices as defined by those provisions.

71. Evanston has violated Section 541.060(a)(1) by misrepresenting to HomeWell the provisions and applications of the Policy relating to the coverage at issue for the Lawsuit.

72. Specifically, Evanston has misrepresented the provisions and applications of the Policy, including but not limited to the following ways:

   a. Evanston sold the Policy to HomeWell for the purpose of providing coverage for HomeWell's professional services related to operating as a franchisor.

   b. Evanston represented to HomeWell that Wrongful Acts or Personal Injury in the performance of professional services, including those professional services related to advertising, marketing, and promotional materials, would be covered under the Policy.

   c. HomeWell relied on those representations when agreeing to purchase the Policy and, when the time came for Evanston to honor those representations, Evanston refused to do so in direct contravention to its representations.

    d. Indeed, the Lawsuit contains numerous allegations, including those described in Paragraphs 24-25, of the types of Wrongful Acts and/or Personal Injuries that Evanston purported to cover under the Policy.

    e. Despite inducing HomeWell to purchase the Policy by portraying that HomeWell would have certain coverages related to its professional services as a franchisor, Evanston now claims that the Policy does not cover these same professional services which HomeWell specifically purchased coverage for under the Policy.

    f. Evanston has also misconstrued the facts related to the Claim, including by claiming that HomeWell does not have coverage based on the conduct of other co-defendants, not HomeWell itself, and ignoring the allegations that clearly give rise to coverage under the Policy.

    g. Indeed, this is the precise reason that HomeWell, on numerous occasions, requested that Evaston reconsider its coverage position.

73. Evanston has violated Section 541.060(a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of HomeWell's claims for coverage of the Lawsuit although Evanston's liability for that Claim has become reasonably clear.

74. Specifically, the allegations in the Lawsuit clearly fall within the Policy's coverage. By denying coverage, Evanston has ignored the allegations, including those contained in Paragraphs 24-25, which fall within the scope of the Policy.

75. Indeed, Evanston even recognized in its November 14, 2023 correspondence that various allegations in the Lawsuit, including those related to HomeWell's advertisements and promotional materials, trigger the Insuring Agreement of the Policy.

76. Yet, despite determining that coverage was clear, Evanston has now refused to provide HomeWell with coverage related to the Lawsuit.

77. Evanston has violated Section 541.060(a)(3) by failing to promptly provide HomeWell with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its denial of HomeWell's claim.

78. More specifically, Evanston never issued a formal coverage position, despite stating in its November 14, 2023 correspondence to HomeWell that "[a] formal letter will be forthcoming."

79. Instead, Evanston indicated to HomeWell that "Evanston reserves the right to limit or disclaim coverage for the Claim[.]"

80. HomeWell reasonably understood this November 14, 2023 correspondence to be a reservation of rights.

81. Even when Evanston later purported to deny coverage for HomeWell's Claim, Evanston never provided the facts or policy provisions it was relying upon to deny coverage.

82. Instead, Evanston vaguely claimed to be relying on "each of the Policy provisions, terms, and exclusions stated in . . . the November 14 Email," as described in Evaston's March 8, 2024 letter from counsel to HomeWell.

83. In that November 14 correspondence, Evanston merely provides one sentence related to each of the exclusions it contends *may* apply. In each of those one-sentence explanations, Evanston fails to describe any alleged conduct by HomeWell that it believes results in coverage being barred by any exclusion.

84. HomeWell has been unable to ascertain the basis for Evanston's denial of coverage because Evanston has failed to provide a reasonable explanation of such reasoning.

85. Evanston has violated Section 541.060(a)(7) by refusing to pay a claim without conducting a reasonable investigation with respect to HomeWell's claim.

86. Indeed, Evanston asserted in an email to HomeWell (without explaining) that there is no coverage for the Lawsuit.

87. When HomeWell attempted to confer with Evanston regarding this wrongful denial, including by describing many allegations that are within the scope of coverage, Evanston failed to consider these allegations or respond to HomeWell.

88. Instead, Evanston first asserted a reservation of rights, then with no further explanation, asserted that the reservation of rights was really a denial of coverage, and never explained to HomeWell its reasoning nor considered HomeWell's reasoning for disagreement.

89. Evanston's denial of the Lawsuit is unreasonable because Evanston has provided absolutely no allegations that support its view that the Claim is not covered, despite HomeWell citing to numerous allegations, including those in Paragraphs 24-25, which are covered under the Policy.

90. As a result of Evanston's conduct, HomeWell has suffered substantial damages as well as attorneys' fees and court costs. The actual amount of policy benefits wrongfully denied to HomeWell will be proven at trial but is in excess of $75,000.

91. Evanston knowingly committed one or more of the violations referenced above, and thus, HomeWell seeks, in addition to its actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of HomeWell's actual damages.

E.   **Attorneys' Fees**

92. The foregoing allegations are incorporated herein by reference.

93. Due to the actions of Evanston, HomeWell has been required to retain the services of the law firm of Haynes and Boone, LLP. HomeWell has agreed to pay Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code and/or Section 542.060 of the Texas

Insurance Code, HomeWell is entitled to an award of its reasonable attorneys' fees against Evanston in an amount to be established at trial.

## JURY DEMAND

94. HomeWell demands a jury trial pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, HomeWell respectfully requests that this Court grant it the following relief:

(1) A declaration that Evanston has an ongoing obligation to defend HomeWell in connection with the Lawsuit;

(2) A declaration that Evanston has breached the terms of the Policy by failing to pay for HomeWell's defense costs in connection with the Lawsuit;

(3) A judgment awarding HomeWell all damages it has suffered as a result of Evanston's breach of the Policy;

(4) A judgment awarding HomeWell all damages sustained as a result of Evanston's violations of Chapter 542 of the Texas Insurance Code;

(5) A judgment awarding HomeWell all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practices and Remedies Code and/or Chapter 542 of the Texas Insurance Code;

(6) A judgment awarding HomeWell pre-judgment and post-judgment interest in the amount allowed by law;

(7) A judgment awarding HomeWell all costs of court; and

(8) Such other and further relief to which HomeWell may be justly entitled.

Respectfully submitted,

*/s/ Natalie DuBose*
Natalie DuBose
State Bar No. 24077481
natalie.dubose@haynesboone.com
Reese Letourneau
State Bar No. 24137622
reese.letourneau@haynesboone.com
HAYNES AND BOONE, LLP
2801 N. Harwood St., Suite 2300
Dallas, Texas 75201
Telephone:   (214) 651-5000
Fax:            (214) 651-5940

Adrian Azer
State Bar No. 24048332
adrian.azer@haynesboone.com
HAYNES AND BOONE, LLP
800 17th St. NW, Suite 500
Washington, D.C. 20006
Telephone:   (202) 654-4500
Fax:            (202) 654-4501

**ATTORNEYS FOR PLAINTIFF HOMEWELL FRANCHISING, INC.**