IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| HOMEWELL FRANCHISING, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-CV-00101-O |
| | § | |
| EVANSTON INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Plaintiff's Motion for Partial Summary Judgment, Brief, and Appendix in support (ECF Nos. 12–14); Defendant's Response and Brief (ECF Nos. 20–21); and Plaintiff's Reply (ECF No. 22). Also before the Court are Defendant's Motion for Summary Judgment, Brief, and Appendix in support (ECF Nos. 15–17); Plaintiff's Response and Appendix (ECF Nos. 18–19); and Defendant's Reply (ECF No. 24).[1] Having considered the briefing and applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 15). Specifically, the Court **DECLARES** that Defendant does not have a duty to defend Plaintiff in the Underlying Lawsuit.

**I.   BACKGROUND**[2]

This is an insurance coverage action. The facts are not in dispute. Plaintiff HomeWell Franchising, Inc. ("HomeWell") grants franchisees licenses to independently own and operate their businesses. These franchisees provide home care services for seniors using HomeWell's

---

[1] Defendant also filed a single page of an apparent Sur-reply on the docket. *See* Def.'s Sur-reply, ECF No. 23. However, the Court assumes Defendant filed the Sur-reply in error and only considers Defendant's Reply.

[2] Unless otherwise indicated, all facts are taken from the parties' summary judgment briefing.

1

trademarks. HomeWell's website houses information about its business and its franchisees' businesses.

### A. Relevant Policy Provisions

HomeWell purchased Policy No. MKLV4PEO001962 (the "Policy") from Defendant Evanston Insurance Company ("Evanston"). The Policy's coverage period was from September 1, 2023, to September 1, 2024. The Policy's Professional Liability Coverage provision provides:

> The Company shall pay on behalf of the Insured all sums in excess of the Deductible stated in the Declarations that the Insured becomes legally obligated to pay as Damages and Claim Expenses incurred as a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if applicable, and reported to the Company pursuant to Paragraph A. Claim Reporting Provision of Section VIII – Claims Reporting And Notice by reason of a:
>
> 1. *Wrongful Act*; or
>
> 2. *Personal Injury*; in the performance of *Professional Services* rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible[.][3]

The Policy defines the specific terms within that provision. To begin, the Policy defines a "Wrongful Act" as "a negligent act, error, or omission in Professional Services rendered."[4] "Personal Injury" under the Policy includes "[h]umiliation or infliction of emotional distress; committed in the performance of Professional Services."[5] Activities that constitute "Professional Services" are the following:

> 1. Providing training programs, operations manuals, and other aids necessary for the start-up of a franchise; 2. Providing informational bulletins and newsletters; 3. Giving advice and assistance in the start-up, management, and operation of a franchise, including site selection and the determination, designation, or modification of the franchise territory; 4. Administration of advertising and promotional programs; 5. Providing assistance to franchisees in marketing the services, goods, or products of the franchisee; 6. Development and administration of operating standards, specifications, or operating procedures for franchisees; or

---

[3] Pl.'s App. Supp. Mot. Partial Summ. J. Ex. 1-A (Policy), App. 16, ECF No. 14 (emphasis added).
[4] *Id.* at 23.
[5] *Id.* at 21–22.

> 7. The preparation, amendment, renewal, or registration of a Franchise Disclosure Document, Uniform Franchise Offering Circular, or any other offering circular described by the Federal Trade Commission.[6]

Further, a "Claim" includes "[a] written demand for Damages or remedial Professional Services, including a written demand that the Insured toll or waive a statute of limitations."[7] The term "Damages" under the Policy refers to "the monetary portion of any judgment, award, or settlement, including punitive damages where insurable by law."[8]

Central to this litigation are the Policy's Bodily Injury and Vulnerable Adult Abuse exclusions. The Bodily Injury exclusion states "[w]ith respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim . . . [b]ased upon or arising out of any actual or alleged Bodily Injury."[9] The Policy designates the following as "Bodily Injury": "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these."[10] But "Bodily Injury" does not include "[h]umiliation or the infliction of emotional distress arising solely from Personal Injury."[11]

Similarly, the Policy's Vulnerable Adult Abuse exclusion states "[w]ith respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim . . . [b]ased upon, arising out of, or in any way involving any actual or alleged Vulnerable Adult Abuse."[12] Under the Policy, "Vulnerable Adult Abuse" means "any act, error, or omission which actually or allegedly results in Bodily Injury or Personal Injury to any Vulnerable Adult."[13] A "Vulnerable Adult" includes a person who "[i]s 60 years of age or older who has the functional, mental, or

---

[6] *Id.* at 35.
[7] *Id.* at 20.
[8] *Id.*
[9] *Id.* at 23–24.
[10] *Id.* at 20.
[11] *Id.*
[12] *Id.* at 43.
[13] *Id.*

3

physical inability to care for himself or herself" or "[i]s receiving services from a licensed home health, hospice, or home care agency."[14]

### B. The Underlying Lawsuit

On September 18, 2023, an individual named William Clair brought suit (the "Underlying Lawsuit") against numerous defendants, including HomeWell, in a California state court, individually and as successor in interest to decedent Julie Egeland.[15] The Underlying Lawsuit's complaint alleges Ms. Egeland was 82-years old and "sustained serious injuries, including her death, that resulted from the Defendants' negligence and failures to render basic custodial care and assistance."[16] The Underlying Lawsuit advances three causes of actions against HomeWell.

The first cause of action accuses HomeWell of misrepresentation, fiduciary fraud, and constructive fraud. Concerning misrepresentation, the Underlying Lawsuit's complaint maintains "Defendants omitted material facts that were not known to Ms. EGELAND and her family or otherwise accessible to them" and "Defendants' website intentionally misleads clients and potential clients to believe that Defendants are capable of providing a higher level of care than they can in truth provide."[17] The complaint explains "Defendants knowingly misrepresented their services to cause Ms. EGELAND and other clients to pay higher prices for care that Defendants in truth could not provide and knew they could not provide."[18] As of result of these misrepresentations, the complaint contends Ms. Egeland "suffered monetary damages and physical and mental injuries as a result of her reliance on the statements of the Defendants,"[19] that is, "pain,

---

[14] *Id.*
[15] *See id.* Ex. 1-B (Underlying Lawsuit), App. 63–87. The Underlying Lawsuit is styled *Julie Egeland, et al. v. A.S.K. Consulting & Design LLC dba HomeWell Care Services, et al.*, Cause No. 23CV008666 in the Superior Court of the State of California in and for the County of Sacramento.
[16] *Id.* at 63–64.
[17] *Id.* at 74, 76. "Defendants" in the Underlying Lawsuit includes HomeWell.
[18] *Id.* at 77.
[19] *Id.* at 79.

suffering, and emotional distress through physical abuse and neglect."[20]

Concerning fiduciary fraud, the Underlying Lawsuit's complaint asserts that "[i]n breach of their fiduciary duty, Defendants consciously concealed important facts that would have impacted Ms. EGELAND's and her family's decision of whether to hire Defendants to provide care to Ms. EGELAND and their decision of whether to have her continue to use Defendants' services."[21] And finally, the Underlying Lawsuit alleges HomeWell committed constructive fraud "[b]y choosing to misrepresent the services they could provide in order to maximize profits." [22]

The second cause of action against HomeWell maintains HomeWell engaged in "unfair, unlawful, and/or fraudulent business practices within the meaning of [California] Business and Professions 25 Code § 17200."[23] For this cause of action, the plaintiffs in the Underlying Lawsuit seek restitution and attorneys' fees.[24]

Finally, the third cause of action is brought under California's Consumer Legal Remedies Act ("CLRA") and alleges that "[a]s a result of these deceptive practices, JULIE EGELAND suffered injury in fact as described in this complaint and lost money as a result of Defendants' actions described herein."[25] The plaintiffs in the Underlying Lawsuit seek injunctive relief and attorneys' fees for this cause of action.[26]

HomeWell timely notified Evanston of the Underlying Lawsuit and requested a defense (the "Claim"). Initially, Evanston's adjuster responded with a reservation of rights. But soon after, Evanston denied HomeWell's Claim and has since not acknowledged its duty to defend and pay

---

[20] *Id.* at 80.
[21] *Id.* at 79.
[22] *Id.* at 80.
[23] *Id.* at 81.
[24] *Id.* at 82.
[25] *Id.* at 84–85.
[26] *Id.* at 85–86.

expense costs of the Underlying Lawsuit. As a result, HomeWell is currently paying for its own defense.

HomeWell, believing the Policy extends coverage to the allegations in the Underlying Lawsuit, filed suit in this Court seeking, among other relief, a declaration that Evanston has a duty to defend HomeWell in the Underlying Lawsuit.[27] HomeWell and Evanston have since filed a Motion for Partial Summary Judgment and a Motion for Summary Judgment, respectively. These Motions are ripe for the Court's review.

## II. LEGAL STANDARDS

### A. Summary Judgment

Here, the questions before the Court are purely legal in nature and contain no fact disputes. "Each party's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial." *Shanze Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 150 F. Supp. 3d 771, 776 (N.D. Tex. 2015). To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). When the summary judgment movant will not have the burden of proof at trial, it need only point a court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Eight-Corners Rule

As the Court is sitting in diversity, Texas law applies to this dispute. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938). In Texas, when an insured is sued by a third party, the

---

[27] Pl.'s Compl. ¶¶ 38–51, ECF No. 1.

insurer's duty to defend is determined "solely from terms of the policy and the pleadings of the third-party claimant." *Gore Design Completions, Ltd. v. Hartford Fire Ins.*, 538 F.3d 365, 368 (5th Cir. 2008) (quoting *GuideOne Elite Ins. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)). "If the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend." *Liberty Mut. Ins. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006).

The policy is to be interpreted using the same general principles as contracts. *Don's Bldg. Supply, Inc. v. OneBeacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). When a policy contains unambiguous terms, a court will enforce it as written. *Id.* No words should be read into the policy, and the meaning of any phrase should be interpreted within the context of the policy. *Id.* If a policy has more than one reasonable interpretation, the ambiguity is resolved in favor of the insured. *Nat'l Union Fire Ins. v. Hudson Energy*, 811 S.W.2d 552, 555 (Tex. 1991).

"[T]he general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Gore Design Completions*, 538 F.3d at 368–69 (quoting *Nat'l Union Fire Ins. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)). "Allegations are read liberally in favor of the insured." *Id.* at 369. "The duty to defend does not depend upon the truth or falsity of the allegations." *Id.* at 368.

"[W]hen the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an *exclusion* from coverage, there is no duty to defend." *Gulf States Ins. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994) (emphasis added). Texas law places the burden of proving that an exclusion applies on the insurer. *Gore Design Completions*, 538 F.3d at 370.

7

## III.   ANALYSIS

HomeWell wants Evanston, its insurer, to cover the costs of its defense in the Underlying Lawsuit.[28] HomeWell seeks a declaration from this Court that Evanston has a duty to defend HomeWell.[29] First, the Court examines whether the facts alleged in the Underlying lawsuit "could potentially give rise to a claim covered" by the Policy. *Utica Nat. Ins. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). If so, then the Court must determine whether the Policy's exclusions negate Evanston's duty to defend HomeWell.

### A. Whether Any of the Claims in the Underlying Lawsuit Potentially Fall within the Policy's Scope of Coverage

"When contemplating whether the underlying litigation triggers policy coverage, the court examines the factual allegations in the complaint and the language of the insurance policy." *Nat'l Union Fire Ins. of Pittsburgh v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 931 (S.D. Tex. 2003), *aff'd*, 88 F. App'x 725 (5th Cir. 2004). HomeWell "bears the initial burden of establishing that a claim against it is potentially within the policy's coverage." *Northfield Ins. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). The Court holds HomeWell has met its burden to demonstrate the factual allegations in the Underlying Lawsuit potentially trigger the Policy's coverage.

The Policy requires Evanston to pay HomeWell's damages and claim expenses in the Underlying Lawsuit if it alleges HomeWell committed a "Wrongful Act" or "Personal Injury" in the performance of HomeWell's "Professional Services" rendered.[30] Under the Policy, "Personal Injury" includes the "infliction of *emotional distress*."[31] To clarify, activities that constitute

---

[28] Pl.'s Br. Supp. Mot. Summ. J. 2, ECF No. 13.
[29] *Id.*
[30] Pl.'s App. Supp. Mot. Partial Summ. J. Ex. 1-A (Policy), App. 16, ECF No. 14 (emphasis added).
[31] *Id.* at 21–22 (emphasis added).

"Professional Services" include "[a]dministration of *advertising* and promotional programs" and "[p]roviding assistance to franchisees in *marketing* the services, goods, or products of the franchisee."[32]

Here, HomeWell has met its burden to demonstrate the "facts alleged in the complaint, if taken as true, would *potentially* state a cause of action falling within the terms of the policy." *Northfield Ins.*, 363 F.3d at 528. For instance, the Underlying Lawsuit's complaint implicates HomeWell's "Professional Services," namely, HomeWell's alleged misrepresentations concerning its website advertising. Specifically, the complaint asserts "Defendants' website intentionally misleads clients and potential clients to believe that Defendants are capable of providing a higher level of care than they can in truth provide."[33] Further, the complaint alleges "Defendants' representations on their website were false and were intended to induce elderly consumers such as Ms. EGELAND to purchase Defendants' services."[34]

The Underlying Lawsuit also implicates a "Personal Injury" in the performance of HomeWell's "Professional Services." Indeed, "[a]s a direct and proximate result of" HomeWell's alleged website advertising misrepresentations, "Ms. EGELAND sustained injuries, pain, suffering, and *emotional distress* through physical abuse and neglect."[35] To be clear, the complaint explicitly maintains Ms. Egeland suffered emotional distress—"Personal Injury"—in the performance of HomeWell's alleged misrepresentations concerning advertisements on its

---

[32] *Id.* at 35 (emphasis added).
[33] *Id.* Ex. 1-B (Underlying Lawsuit), at App. 76.
[34] *Id.* at 78.
[35] *Id.* at 80 (emphasis added).

website—"Professional Services."[36] These factual allegations alone are enough to trigger Policy coverage.[37] But this is not the end of the Court's inquiry.

### B. Whether Any of the Policy's Exclusions Negate Evanston's Duty to Defend

"[I]f the insurer can show that *all* of the alleged liability falls outside of the scope of coverage or within the scope of an exclusion, the insurer has no duty to defend." *City of College Station v. Star Ins.*, 735 F.3d 332, 336–37 (5th Cir. 2013). Based on the foregoing, the Court concludes the Policy's exclusions negate Evanston's duty to defend.

It is Evanston's burden to demonstrate the Policy's exclusions preclude coverage of HomeWell's alleged liability. *See Gore Design Completions*, 538 F.3d at 370. Evanston argues the Policy's Bodily Injury and Vulnerable Adult Abuse exclusions negate its duty to defend HomeWell.[38] The Bodily Injury exclusion prohibits Policy coverage for any claim "*[b]ased upon or arising out of* any actual or alleged Bodily Injury."[39] The term "Bodily Injury" under the Policy means "bodily injury, sickness, or disease sustained by a person, including death."[40]

---

[36] The Policy states that Evanston has a duty to defend HomeWell if the Underlying Lawsuit alleges a "Wrongful Act" *or* "Personal Injury" in the performance of "Professional Services" rendered. Pl.'s App. Supp. Mot. Partial Summ. J. Ex. 1-A (Policy), App. 16, ECF No. 14. Texas law requires an insurer to defend the insured if "a single claim in a lawsuit potentially falls within an insurance policy's coverage." *Trinity Universal Ins. v. Emps. Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010). Because the Underlying Lawsuit *at least* implicates a "Personal Injury," there is no need for the Court to opine on whether the Underlying Lawsuit alleges a "Wrongful Act" against HomeWell. The fact that it accuses HomeWell of a "Personal Injury" is enough to trigger Policy coverage.

[37] Evanston argues that "some relief sought in the underlying lawsuit does not meet the policy's definition of 'Damages' negating Evanston's duty to defend those claims." Def.'s Mot. Summ. J. 1, ECF No. 15. The Underlying Lawsuit's misrepresentation cause of action, though, explicitly states Ms. Egeland "suffered monetary damages," thereby falling within the Policy's definition of "Damages." And, as explained above, because the misrepresentation allegations involve a "Personal Injury" in the course of "Professional Services," the Policy covers these allegations. So, any arguments pertaining to damages not covered under the Policy are inapposite.

[38] Def.'s Br. Supp. Mot. Summ. J. 15, ECF No. 16 (The Policy "excludes from coverage all causes of action against HomeWell in the Underlying Lawsuit under the Bodily Injury and Vulnerable Adult exclusions.").

[39] Pl.'s App. Supp. Mot. Partial Summ. J. Ex. 1-A (Policy), App. 23–24, ECF No. 14 (emphasis added).

[40] *Id.* at 20.

Similarly, the Vulnerable Adult Abuse exclusion precludes Policy coverage for any claim "*[b]ased upon, arising out of,* or *in any way involving* any actual or alleged Vulnerable Adult Abuse."[41] "Vulnerable Adult Abuse means any act, error, or omission which actually or allegedly results in Bodily Injury or Personal Injury to any Vulnerable Adult."[42] Again, "Personal Injury" under the Policy includes the "infliction of emotional distress."[43] So, though the Policy provides coverage for claims involving a "Personal Injury" in the performance of "Professional Services," the Vulnerable Adult Abuse exclusion precludes coverage of a claim if it implicates the "Personal Injury" of a Vulnerable Adult.[44] To be clear, both exclusions preclude Policy coverage for "Bodily Injury," but the Vulnerable Adult Abuse exclusion also proscribes coverage for the emotional distress to a vulnerable adult, i.e., "Personal Injury."

The parties focus on the phrases "arising out of" and "in any way involving."[45] Texas law is clear "that 'arise out of' means that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat. Ins.*, 141 S.W.3d at 203 (internal quotation marks and citation omitted); *see also U.S. Liquids, Inc.*, 271 F. Supp. 2d at 932–33 (S.D. Tex. 2003) (The district court interpreted "arising out of" to require an "*incidental* relationship" when listed among the phrases "*alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly*" in the policy exclusion at issue (citation omitted)). The Fifth Circuit has affirmed this reasoning. *See, e.g.*, *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003) ("Under Texas law, when an exclusion prevents coverage for injuries 'arising out of' particular conduct,

---

[41] *Id.* at 43 (emphasis added).
[42] *Id.* The parties do not dispute that Ms. Egeland qualifies as a "Vulnerable Adult" under the Policy.
[43] *Id.* at 21–22.
[44] *Id.* at 43.
[45] *See* Def.'s Br. Supp. Mot. Summ. J. 8–10, ECF No. 16; Pl.'s Resp. 17–19, ECF No. 18.

[a] claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply." (alteration in original) (internal quotation marks and citation omitted)).

HomeWell posits the plaintiffs in the Underlying Lawsuit "could bring their misrepresentation, fraud, and CLRA claims regardless of whether anyone suffered bodily injury—these claims stand independently—and, therefore, they do not 'arise out of' bodily injury."[46] In other words, "[w]hile there are certainly claims of bodily injury and negligence in the [Underlying] Lawsuit," they are irrelevant to "the misrepresentation, constructive fraud, fraud and CLRA claims against HomeWell."[47] But the Underlying Lawsuit demonstrates otherwise.

Indeed, the Underlying Lawsuit's misrepresentation allegations against HomeWell at least bear an incidental or causal relationship to the Policy's excluded conduct. The Underlying Lawsuit's complaint states that "Defendants promised Ms. EGELAND and her family . . . they would be providing a very high quality of care and that they were taking whatever steps were necessary to ensure Ms. EGELAND's safety and comfort."[48] The complaint continues, "[t]hese claims were false and it led to Ms. EGELAND being abandoned . . . without the care and services she paid for which forced her to attend to her own needs *leading to her falling and breaking her back*."[49]

The complaint also alleges "Defendants' website intentionally misleads clients and potential clients to believe that Defendants are capable of providing a higher level of care than they can in truth provide."[50] They "promised that they could provide 24-hour care but did not have

---

[46] Pl.'s Resp. 15, ECF No. 18.
[47] *Id.* at 16.
[48] Pl.'s App. Supp. Mot. Partial Summ. J. Ex. 1-B (Underlying Lawsuit), App. 64, ECF No. 14 (emphasis added).
[49] *Id.* (emphasis added).
[50] *Id.* at 76.

a system in place for when caregivers missed a shift, thus leaving their vulnerable clients abandoned."[51]

Moreover, the complaint states "Defendants knowingly misrepresented their services to cause Ms. EGELAND and other clients to pay higher prices for *care* that Defendants in truth could not provide and knew they could not provide."[52] Further, when Ms. Egeland was in pain from her fractured back, "Defendants still did not seek additional care for Ms. EGELAND despite knowing she needed a higher level of care to recover from the fracture, and despite *representing* they would connect her to a higher level of care if she needed it."[53] And as a result of these misrepresentations, "Ms. EGELAND sustained *injuries*, pain, suffering, and *emotional distress* through physical abuse and neglect."[54]

As to the allegations concerning the California Business and Professions Code, the complaint states "Defendants made a practice of misrepresenting to potential residents and their families the type, level, and extent of *care* that would be provided to clients upon signing on to receive Defendants' services."[55] And finally, the CLRA cause of action alleges that "[a]s a *result* of these deceptive practices, JULIE EGELAND *suffered injury in fact* as described in this complaint and lost money as a result of Defendants' actions described herein."[56]

Contrary to HomeWell's argument, the allegations above are not independent claims of financial injury.[57] Rather, the Underlying Lawsuit is rife with allegations tying the causes of action

---

[51] *Id.*
[52] *Id.* at 77 (emphasis added).
[53] *Id.* at 78 (emphasis added).
[54] *Id.* at 80 (emphasis added).
[55] *Id.* at 81 (emphasis added).
[56] *Id.* at 85 (emphasis added).
[57] *See* Pl.'s Resp. 15, ECF No. 18 (arguing "[t]hese claims occurred independently at the moment the misrepresentations were allegedly made and create liability whether or not Ms. Egeland later suffered bodily injury or emotional distress because the harm caused by these allegations is (and can only be) *financial harm*").

13

against HomeWell to Ms. Egeland's bodily and personal injury, thereby creating at least an incidental relationship. Indeed, "'[b]ut for' [Ms.] Egeland falling due to not receiving the proper level of supervised care HomeWell represented would be provided, there would be no legally viable underlying claims because Egeland would not have sustained any injuries or incurred any damages."[58] Said simply, Ms. "Egeland would not have sustained any 'Personal Injury' or 'Bodily Injury' as defined by the Policy" and used in both the Bodily Injury and Vulnerable Adult Abuse exclusions "had she been given the care represented by HomeWell."[59]

In sum, the Court concludes Evanston has met its burden to demonstrate that all of the alleged liability against HomeWell falls within the scope of a Policy exclusion.

## V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Evanston's Motion for Summary Judgment (ECF No. 15). Specifically, the Court **DECLARES** that Evanston has no duty to defend HomeWell in the Underlying Lawsuit. Because Evanston properly denied HomeWell's defense of the Underlying Lawsuit, HomeWell's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **5th day** of **August, 2025**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[58] Def.'s Resp. Br. 9, ECF No. 21.
[59] *Id.*